UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MD MOBARAK HOSSAIN,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

CASE NO. 2:26-cv-00923-LK

ORDER DENYING HABEAS
PETITION

This matter comes before the Court on Petitioner MD Mobarak Hossain's pro se petition of writ of habeas corpus. Dkt. No. 4. For the reasons set forth below, the Court denies the petition.[1]

## I.    BACKGROUND

Hossain is a native and citizen of Bangladesh. Dkt. No. 9 at 1. He applied for a diversity immigrant visa and entered the United States as a lawful permanent resident in 2010. Dkt. No. 10-3 at 4. In 2016, he was convicted of Endangering the Welfare of a Child—a misdemeanor under New York Law Section 260.10, and Sexual Abuse in the First Degree: Sexual Contact with

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER DENYING HABEAS PETITION - 1

Individual Less than 11 Years Old—an aggravated felony under New York Penal Law Section 130.65. Dkt. No. 9 at 1–2; Dkt. No. 10-1 at 2; Dkt. No. 10-3 at 4. Hossain was sentenced to three years in prison and five years of supervised release. Dkt. No. 10-1 at 2. He was released from prison in January 2019 and required to register as a sex offender. Dkt. No. 9 at 2.

Hossain was arrested on June 27, 2025 in New York for Assault in the Third Degree—with Intent to Cause Physical Injury—and Harassment in the Second Degree—Physical Contact; resolution of those charges is on-going. *Id.* On August 7, 2025, he was detained by the New York fugitive operations team of U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations. *Id.* The same day, he was served with a Notice to Appear ("NTA") which charged him with inadmissibility under (1) Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") because he had been convicted of an aggravated felony, and (2) Section 237(a)(2)(E)(i) of the INA because he had been convicted of a crime of child abuse or neglect. *Id.*; Dkt. No. 10-6 at 2, 5. Although Hossain requested a custody determination, he has not received a bond hearing. Dkt. No. 9 at 2. He was transferred to the NWIPC on August 14, 2025. *Id.*

Hossain subsequently filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. *Id.* The immigration court denied his application for that relief on February 17, 2026 and ordered him removed to Bangladesh. *Id.* at 3. Hossain appealed that denial to the Board of Immigration Appeals ("BIA"), and his appeal remains pending. *Id.*

Hossain filed this habeas petition on March 16, 2026. Dkt. No. 4. Respondents[2] oppose the petition. Dkt. No. 8.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER DENYING HABEAS PETITION - 2

## II.    DISCUSSION

Hossain contends that he is being held in "Prolonged Mandatory Detention without individualized assessment." Dkt. No. 4 at 3. That is, his "prolonged detention without an individualized bond hearing is now in violation of due process." *Id.* at 4. His petition does not expressly specify the type of relief sought, but suggests that he seeks a bond hearing. *See id.* at 3–4 (repeatedly stating that his detention without an individualized assessment violates his due process rights); Dkt. No. 11 at 2. Respondents argue that Hossain's detention is mandatory and does not violate due process. Dkt. No. 8 at 4–9.

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The Supreme Court has held that federal courts have jurisdiction to review a constitutional challenge to a noncitizen's detention under § 1226(c). *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all

ORDER DENYING HABEAS PETITION - 3

'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore*, 538 U.S. at 523 (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.      Hossain Is Not Entitled to Habeas Relief**

1.   Hossain Concedes that He Is Detained Under Section 1226(c)

The parties agree that Hossain is detained under 8 U.S.C. § 1226(c). Dkt. No. 8 at 4; Dkt. No. 11 at 1. Section 1226 of title 8 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

Under Section 1226(c), however, noncitizens who have committed certain listed offenses or who have been identified by the government as involved in terrorist activities are subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(A)–(E).[3] The Supreme Court's decisions in *Demore* and *Jennings* addressed the meaning of Section 1226(c) as it relates to bond hearings.

In *Demore*, a noncitizen who had been a lawful permanent resident for 10 years (Kim) was detained under Section 1226(c) after he was convicted of first-degree burglary and "petty theft

---

[3] Section 1226(c) was amended on January 29, 2025, but those amendments are irrelevant to this case. *See* 139 Stat. 3 (2025).

ORDER DENYING HABEAS PETITION - 4

with priors" in California. 538 U.S. at 513. The Immigration and Naturalization Service ("INS") charged him with being deportable from the United States in light of these convictions, and detained him pending his removal hearing. *Id.* After roughly six months of detention, Kim filed a habeas corpus action arguing that his detention "violated due process because the INS had made no determination that he posed either a danger to society or a flight risk." *Id.* at 513–14. The Supreme Court reversed lower court decisions holding that Kim was entitled to a bond hearing, emphasizing that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz,* 426 U.S. 67, 79–80 (1976)). It held that Congress— "justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings"—"may require that persons such as [Kim] be detained for the brief period necessary for their removal proceedings." *Id.* at 513; *see also id.* at 528 ("[I]n adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release of [noncitizens] pending their removal hearings would lead to large numbers of deportable criminal [noncitizens] skipping their hearings and remaining at large in the United States unlawfully."). In response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing," the Court pointed to its holding in *Zadvydas*, which "permit[ed] [noncitizens] to be detained for several months prior to such a hearing." *Id.* at 529 n.11.

The Supreme Court's decision in *Jennings* expanded upon the Court's analysis of Section 1226(c). *Jennings* involved a class of noncitizens who were detained under Sections 1225(b), 1226(a), or 1226(c) pending completion of removal proceedings and who had been detained more than six months without a bond hearing. 583 U.S. at 290. The Ninth Circuit "construed §§ 1225(b) and 1226(c) as imposing an implicit 6-month time limit on a[ noncitizen]'s detention under these sections," and held that a noncitizen "must be given a bond hearing every six months and that

ORDER DENYING HABEAS PETITION - 5

detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." *Id.* at 291–92. The Supreme Court reversed, holding that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable proceedings," and that there was no justification for any of the procedural requirements that the Ninth Circuit imposed "without any arguable statutory foundation." *Id.* at 296–97. With respect to Section 1226(c) in particular, the Court emphasized that "by allowing [noncitizens] to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that [noncitizens] detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute"—and the statutory text made clear that detention "*must* continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Id.* at 303 (quoting 8 U.S.C. § 1226(a)); *see also id.* at 304 ("By expressly stating that the covered [noncitizens] may be released 'only if' certain conditions are met, . . . the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained [noncitizens] under any other conditions.").

Accordingly, noncitizens detained under Section 1226(c) are not statutorily eligible for release on bond. *See Avilez v. Garland*, 69 F.4th 525, 535–36 (9th Cir. 2023) (explaining that "noncitizens subject to mandatory detention under Subsection C are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by § 1226(c)(2)."). The Court therefore focuses on Hossain's due process challenge to his detention.

### 2.  Continued Detention Does Not Violate Hossain's Due Process Rights

Even if a petitioner's continued detention is statutorily permitted under 8 U.S.C. § 1226(c), it must also comport with due process. *See Gomez v. ICE Field Off. Dir.*, No. 2:25-cv-02242-TL-

ORDER DENYING HABEAS PETITION - 6

TLF, 2026 WL 449536, at *3 (W.D. Wash. Jan. 27. 2026), *report and recommendation adopted*, 2026 WL 447409 (W.D. Wash. Feb. 17, 2026). As noted above, Hossain contends that his "prolonged detention without an individualized bond hearing is now in violation of due process." Dkt. No. 4 at 4. Respondents counter that Hossain's continued detention comports with due process requirements. Dkt. No. 8 at 5–9.

As set forth above, Hossain's petition does not expressly set forth the relief he seeks, but if he is seeking release, the Court cannot grant that relief. "There is no authority supporting [his] claim that he is entitled to an order of release" from this Court when the statute mandates his detention. *Martinez v. Clark*, No. 2:18-cv-1669-RAJ-MAT, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019) (explaining that if a due process violation is found with respect to a noncitizen detained under Section 1226(c), "the proper remedy is a bond hearing"), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019); *see also Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL, 2024 WL 1676681, at *1 (W.D. Wash. Apr. 18, 2024) (same). The Court thus focuses on whether due process requires a bond hearing under these circumstances.

The Ninth Circuit has declined to rule on whether due process requires a bond hearing for a noncitizen detained under § 1226(c). *Avilez*, 69 F.4th at 538. However, it has observed that after the Supreme Court's decision in *Jennings*, "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022). The circuit courts that have addressed the issue post-*Jennings* are split.

In 2021, the First Circuit rejected the contention that "all persons detained under section 1226(c) have a constitutional right to a hearing concerning the reasonableness of their continued detention after they have been detained longer than six months," but acknowledged "that the Due

Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention under section 1226(c)." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (citation modified). Similarly, in *German Santos v. Warden Pike County Correctional Facility*, the Third Circuit "explicitly declined to adopt a presumption of reasonableness or unreasonableness of any duration," instead imposing a "highly fact-specific inquiry" that considers "the duration of detention" along with "all the other circumstances," "whether the detention is likely to continue," "the reasons for the delay, such as a detainee's request for continuances," and "whether the [noncitizen's] conditions of confinement are meaningfully different from criminal punishment." 965 F.3d 203, 210–11 (3d Cir. 2020) (citation modified). And in *Black v. Decker*, the Second Circuit joined the First and Third Circuits "in rejecting a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." 103 F.4th 133, 150 (2d Cir. 2024). Instead, the court held that due process challenges to prolonged detention under section 1226(c) should be reviewed under the *Mathews v. Eldridge* framework, as it is a "flexible test" that "takes account of individual circumstances" and "comports with the Supreme Court's guidance in *Jennings* that 'due process is flexible,' . . . and . . . 'calls for such procedural protections as the particular situation demands.'" *Id.* at 148 (quoting *Jennings*, 583 U.S. at 314 (other citations and quotation marks omitted)).

In contrast, the Eighth Circuit held that Supreme Court precedent "leave[s] no room for a multi-factor "reasonableness' test." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024). In its view, "*Zadvydas* and *Demore* have already done whatever balancing is necessary," permitting the detention of a noncitizen "for as long as deportation proceedings are still '*pending*.'" *Id.* (quoting *Demore*, 538 U.S. at 527 and quoting with approval *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) for the proposition that a noncitizen detained under Section 1226(c) "has the keys in his

ORDER DENYING HABEAS PETITION - 8

pocket" and can "end[] his detention immediately" by "withdraw[ing] his defense . . . and return[ing] to his native land").

This Court joins the First, Second, and Third Circuits in rejecting a bright-line rule in this context. Consistent with the Ninth Circuit's expression of "grave doubt[] that any statute that allows for arbitrary prolonged detention without any process is constitutional," *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), though, the Court also rejects the proposition that detention is permissible, no matter how prolonged, for as long as deportation proceedings are still pending. Courts in this District apply an individualized test to determine whether a noncitizen's prolonged mandatory detention under 1226(c) without a bond hearing violates due process. *Herrera v. Mayorkas*, No. C24-1933-JNW-MLP, 2025 WL 2382093, at *5 (W.D. Wash. May 19, 2025), *report and recommendation adopted*, 2025 WL 2380669 (W.D. Wash. Aug. 15, 2025) (citing *Martinez*, 2019 WL 5968089, at *8–9 n.8). In particular, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Martinez*, 2019 WL 5968089, at *7. Both parties apply the *Martinez* test. Dkt. No. 8 at 6–9; Dkt. No. 11 at 3–10.

The first factor "is the most important one." *Ashemuke v. ICE Field Office Dir.*, No. 2:23-cv-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024). Respondents argue that the first factor does not weigh in favor of a bond hearing because Hossain's nine-month detention, while "prolonged," "has not reached the reached the length of what many courts have

ORDER DENYING HABEAS PETITION - 9

found to be unreasonable." Dkt. No. 8 at 7. Hossain responds that the length of his detention has become unreasonable. Dkt. No. 11 at 4. The Court finds that Hossain's nine-month detention "at most, weighs slightly in favor of granting a bond hearing" because it has not extended significantly beyond the six-month period presumed reasonable in *Demore*. *Odimara v. Bostock*, No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024), *report and recommendation adopted*, 2024 WL 3859703 (W.D. Wash. Aug. 19, 2024) (finding that petitioner's six-month detention "is neutral or, at most, weighs slightly in favor of granting a bond hearing"); *see also Demore*, 538 U.S at 531 (upholding ongoing detention of six months); *Ashemuke*, 2024 WL 1683797, at *4 ("The longer mandatory detention continues beyond the 'brief' period authorized in *Demore*, the harder it is to justify."); *Rashad v. LaRose*, No: 3:26-cv-1750-CAB-VET, 2026 WL 962660, at *1 (S.D. Cal. Apr. 9, 2026) (finding that the length of detention factor "weighs heavily against Petitioner given that he has been detained for approximately nine months"); *Sibomana v. LaRose*, No. 22-CV-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023) (noting that courts "become extremely wary of permitting continued custody absent a bond hearing" when "detention continues past a year").

Respondents argue that the second factor—how long detention is likely to continue absent judicial intervention—is neutral because "any projection would be speculative." Dkt. No. 8 at 7. Hossain responds that his appeal to the BIA is still pending, and if he is unsuccessful there, he will file a petition for review with the Ninth Circuit. Dkt. No. 11 at 5. Hossain points to the Ninth Circuit's website, which states that a decision can be expected "[f]or a civil appeal, approximately 6–12 months from the notice of appeal date, or approximately 4 months from completion of briefing." *See* United States Court of Appeals for the Ninth Circuit, Office of the Clerk, Frequently Asked Questions, https://www.ca9.uscourts.gov/general/faq/ (last visited Apr. 28, 2026). However, the Ninth Circuit's rules do not equate a "civil appeal" with a "petition for review." *See,*

ORDER DENYING HABEAS PETITION - 10

*e.g.*, Circuit Rule 3-6 (rule for summary disposition "in a civil appeal or petition for review"); Fed. R. App. P. 15, 17 (procedures for petitions for review); Circuit Rules 15-4, 17-1 (requirements for a petition for review in immigration cases). Accordingly, the Court cannot assume that the approximate time frame for disposition of a civil appeal applies to a petition for review. In the absence of any information about how long resolution of Hossain's BIA appeal and *possible* appeal to the Ninth Circuit could take, the Court finds that this factor is neutral.

The third factor—whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable—weighs in the government's favor because the nine months Hossain has spent in detention does not exceed his three-year prison term. Dkt. No. 10-1 at 2. The fourth factor—the nature of the crimes the petitioner committed—is "indicative of whether the detainee would be a danger to the community or a risk of flight such that a bond hearing would be futile." *Odimara*, 2024 WL 3862256, at *7. This factor favors the government because Hossain was convicted of a serious felony. Dkt. No. 10-1 at 2; *see Gomez*, 2026 WL 449536, at *5 (finding that this factor weighed in the government's favor when the petitioner had been convicted of a serious felony).

The fifth factor examines the conditions of detention. Hossain avers that the NWIPC is currently "severely understaffed [and] under-stocked on supplies." Dkt. No. 11 at 7. According to Hossain, "there are no contact visits at NWIPC unless specifically approved in emergency situations or for detainees being removed," "visits only last for on[e] hour, movement is restricted in the facility, detainees are only allowed one hour of daily outdoor recreation," and they "are subject to frequent and unannounced searches" including a "pat down search as [detainees] move from a unit to other areas of the facility and back." *Id.* at 8 (citation modified). The conditions Hossain describes are "similar to those in many prisons and jails," *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025) (citation modified), so the

ORDER DENYING HABEAS PETITION - 11

Court finds that this factor weighs in his favor. *See Anyanwu v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. 2:24-CV-00964-LK-GJL, 2024 WL 4627343, at *6 (W.D. Wash. Sept. 17, 2024) (finding petitioner's evidence that "restrictions placed on his movements and conduct at NWIPC are similar to those restrictions imposed in penal institutions" was sufficient for this factor to weigh in petitioner's favor under *Martinez* test), *report and recommendation adopted sub nom. Anyanwu v. ICE Field Off. Dir.*, No. C24-0964 TSZ, 2024 WL 4626381 (W.D. Wash. Oct. 30, 2024); *Sarr v. Immigr. & Customs Enf't Field Off. Dir.*, 765 F. Supp. 3d 1091, 1103 (W.D. Wash. 2024).[4]

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. Hossain filed three motions for continuances of his individual merits hearing before the Immigration Court, which continued the hearing from December 30, 2025 to February 3, 2026. Dkt. No. 9 at 2–3. However, this factor only weighs against a petitioner when he "has 'substantially prolonged his stay by abusing the processes provided,'" not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). Accordingly, this factor is neutral. *Gomez*, 2026 WL 449536, at *6. The seventh factor (government-caused delays) is neutral because there is no evidence that the government has caused delays. *Id.*

Finally, to evaluate the eighth factor—the likelihood that the removal proceedings will result in a final order of removal—the Court "considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10. Hossain has appealed the decision denying him relief and ordering him removed to Bangladesh. Dkt. No. 9 at 3. The Court does not

---

[4] To be clear, the Court analyzes the fifth factor based on Hossain's allegations, not based on conditions described in prior years in other cases.

ORDER DENYING HABEAS PETITION - 12

have sufficient information to determine whether Hossain's appeal has merit or whether he ultimately will prevail. Consequently, this factor is neutral.

In sum, the Court finds that the first factor weighs at most slightly in Hossain's favor, and the fifth factor weighs in his favor. The rest of the factors are either neutral or weigh in the government's favor. On this record, the Court does not find that Hossain's "continued mandatory detention under § 1226(c) has become unreasonable and in violation of due process." *Martinez*, 2019 WL 5968089, at *11. Consequently, the Court does not order the government to provide a bond hearing at this time. If continued detention becomes unreasonably prolonged or indefinite, Hossain may file another habeas petition at that time. Now, though, he is not entitled to habeas relief.

Finally, in his reply brief, Hossain alleges that immigration bond hearings are "shams" and requests that the Court hold a bond hearing "in the District Court." Dkt. No. 11 at 11. Hossain did not include this request in his petition, *see generally* Dkt. No. 4, and the Court does not entertain this new request for relief in his reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Dao v. Bondi*, No. 2:25-cv-02340-LK, 2026 WL 18626, at *4 n.2 (W.D. Wash. Jan. 2, 2026) (declining to consider the petitioner's new request for relief in his reply brief).

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Hossain's habeas petition. Dkt. No. 4.

Dated this 1st day of June, 2026.

Lauren King
United States District Judge

ORDER DENYING HABEAS PETITION - 13